Good afternoon. The fourth district appellate court of the state of Illinois has now convened. The Honorable Robert Stagman presiding. Thank you, Mr Clerk. This is case number 4 20 0002. In re Estate of John Roderick McLaughlin for the appellant is attorney Stephen Thomas, who's going to be participating in the phone. Are you there, Mr Thomas? Yes, I'm here. Can you hear me? Uh, yes, I can. And participating by zoom for the appellee is attorney Carl Tenney. Yes, sir. Yes, sir. Do you see me? Yes. Is that pronounced directly, Mr Tenney? Yes, Tenney. Thank you. Okay. Well, thank you, Counsel. Uh, when we'll proceed with oral argument this time, beginning with the appellant, Mr Thomas, you may proceed, sir. Thank you. And I've got a timer. I'm starting now at 20 minutes. Okay. And yes, go ahead. Okay. Okay. I believe the main issue here, uh, is whether the administrators of the estate could have reasonably ascertained the National Alliance claim or not. I believe under the law of the state of Anderson Fourth District case, the burden is on them to prove to prove that. Um, now at trial, the only evidence they had was the testimony of one of the administrators, Michael McLaughlin, that he did not know of a claim and had no means to ascertain the claim and that he did all he could to do so reasonably. Um, now that evidence would be sufficient if there were no evidence that indicated otherwise. But here there was evidence to the contrary. There are a couple of from a Virginia court case in which, um, National Alliance is a counter claimant against the deceased John McLaughlin. There's a motion to extend which Mr John McLaughlin signed February 17th, 2017. That was filed with the Virginia court. John died suddenly and unexpectedly five days later on John kept a copy of that document and that the administrator should have found it. Now, against this likelihood, we only have Michael's uncorroborated testimony that John kept poor records and that he didn't see any such document among those records. Secondly, there's an order allowing the withdrawal of Douglas Bywater as John's attorney in the Virginia case and an evidence deposition of Mr Bywater and states he sent a copy of this order to John at his home address in Illinois. Now, that first document, the motion to extend it contained in the caption destinations of counter claimant, National Alliance and counter defendant John McLaughlin. And in the body of that, it said to answer, John said to withdraw order. And there's a statement in there that says, quote, a counter claim has been filed against Mr McLaughlin. So again, against this, it's Michael's testimony that he'd never saw any such document and that John kept poor records. And that that was why, even though we have deposition and evidence deposition that said this was mailed to John's Illinois address, there's no evidence that John had more than one Illinois address. So it's highly probable that this mailing was one of the same of the one that Mr Bywater, Mr Bywater said he sent the copy of the Virginia order to withdraw. It's not certain that this is a mailing of Mr Bywater was the same as the court order, as Mr Tenney points out in his brief. But I think it's pretty likely that this is the only document Mr Bywater would have sent at that time he was withdrawn. I think it's likely we're talking about what's likely and what's not likely. So I think it's likely this was a court order that was sent. There was no return, according to Mr Bywater. I think it's only likely that it was received. It was delivered and received by one of the administrators. I have a question for you, Mr Thomas. This is Judge Steigman and I with regard to, uh, the mailing from Mr Bywater that the court accepted was received. Is there any other evidence in this? Yeah. Can you hear me? I hear you. Yes, I hear you, sir. Is there any other evidence in this record to show knowledge on the part of the executor of the Virginia litigation? Well, the only evidence is that he other than Mr Bywater's letter. Well, there's the existence of of the order itself and Mr Bywater's evidence deposition that he sent it to John's Illinois address regarding the request to admit. Was that a request to admit that, uh, the executor had received a mailing from Mr Bywater? I believe it was. I don't have that right before me at this moment. The next question is, did the request to admit, which is the basis for the letter from Mr Bywater being part of this record that it can did the request to admit regarding that letter from Mr Bywater described the contents of the letter or any attachment contained within the letter? Well, I'm trying to find that, uh, request to admit here. It's in the exhibit screen. Just a second to see if I can locate that. Yeah, I'm not putting my hand on it right away. Well, while you're looking, I have a question for you. It's regarding the estate of Anderson case that you made reference to earlier. Yeah, this court in that case wrote the following minimal stand. Minimum standards of diligent inquiry would necessitate a good faith search of deceiving his personal and business financial records to disclose that state such comparable to that required to marshal assets and compile inventory of the estate. Given the testimony of the executor of this case, where his testimony for fall short in your view of, uh, the minimum standard. Well, that language from Anderson, I believe, is an example. Uh, and it's a general example of what an administrator should do. Looking generally for records of possible claims. But here, what I'm talking about is something that is specific that should have been found by the administrator. Since Mr McLaughlin signed a document, a court document which he filed in the court only five days before his unexpected death. And my point is that that should have been there somewhere. And Mr McLaughlin, Michael McLaughlin, I don't think he's being honest to tell you the truth in his testimony because that should have been found. Well, it should have been among his effect. Here's the next question, Mr Thomas. He testified at trial. Uh, isn't isn't your claim that he's not being honest that his testimony shouldn't be believed something for the trial court to resolve? And apparently it did believe them. So why should we second guess the trial court in that regard? Well, that goes to the manifest weight standard. And like I say in my brief, there are a lot of other factors that impinge on his credibility. The fact that he's an interested witness that he has a stake in this. He stands to lose $850,000 possibly. And all he has to do is deny, deny, deny. And he can avoid this claim completely. I think that's something the court should have taken into account. Did you argue that to the trial judge? I believe it was obvious. I don't I'm not sure I remember if I argued that or not. But I think there was a motion to reconsider. And the judge said at the end of that motion to reconsider, even if Mr McLaughlin did see that document, there wasn't enough to make it reasonably ascertainable, which I think is a ridiculous statement, to be frank, because the judge said, even if he saw it, it wasn't as retainable. Regarding the question of credibility, the manifest weight of the evidence standard, we have to conclude that the trial courts, the executor was unreasonable. The no reasonable person what's our basis? Yes, that's what I'm arguing just right now. When you see these documents that they state that there was a counterclaim, both of these documents was two of them. So the possibility the likelihood that two documents were not found that should have been found. If we didn't have Mr McLaughlin's Mr. John McLaughlin signed this document a motion he filed in a court five days before his death. His death was unexpected. How likely is it? He didn't keep a copy of that for his somewhat for his administrators to find. Also, in light of Mr Bywater's testimony that he had withdrawn, an order was entered and you would expect him to send in a copy of the order of withdrawal to his to Mr McLaughlin. And he deposed that he did that. How likely is it that that document was not found even after it was mailed to the mailbox in Illinois that the administrators were checking? It just it just seems incredible that two of these documents were not found. I have one other question on this. Leaving aside for the moment, the question of Mr Bywater's letter and just focusing on the testimony of the steps he took. I know both. What are the depths of the estate? What are the assets of the estate? What more should the executor have done your opinion that he did in this case again? He should have seen these documents. I'm relying on the fact that these documents by saying, leaving aside for a moment the question of the Bywater document. I wanted a letter. What else should the executor, given his testimony, what else should he have done to ascertain assets and liabilities of the estate? Well, I don't think he could have done anything if he didn't have these documents. That's what I'm relying on. I wouldn't expect him to go through all 50 states and all the probate courts and and all the all the cases everywhere to examine to see if there were any claims. That, I think, is going too far. That would be not reasonable. But my argument is that we do have these documents and evidence and so his testimony, standing alone, that's not good enough. Shall I continue then? Yes, go ahead. So you did ask me about the deemed admission and I think that it was by operation of law. I think there's a question whether the trial court properly considered this to be a deemed admission. My position is the court was not justified in saying Michael's testimony overcame that request to admit admission. And I did not waive the admission by my cross-examination because its purpose was not to prove up what Michael had deemed, but to impeach his credibility. And the cases Mr. Tenney cited in his reply, I think only go to show that about what is needed to get from an evidence admission to a judicial admission, but a request to admit that is untimely, that is admitted because it's untimely, that bypasses all that and it automatically becomes a judicial admission. But again, my main argument is that the evidence contradicting Michael's testimony puts his testimony into doubt. And I think this court has to decide what most likely happened and I think the trial court had to do that too and that the trial court dropped the ball on it. I think the court should keep in mind the objective nature of these documentary evidence as opposed to the subjective nature of Michael. Michael's testimony, the fact he could say whatever he wanted and nobody could really question that. And the fact that he was such an interested witness, he had thousands, hundreds of thousand dollars at stake. The standard of proof is preponderance of the evidence, so it's more likely than not. The fact of this objective evidence in the form of these Virginia court documents, the likelihood that they should have been found by an administrator, I think outweighs what Mr. Michael McLaughlin testified to. I think Mr. Tenney argued that it's possible that Michael McLaughlin didn't see their document, but I asked the court how likely is that given the nature of these documents when the one was signed, the motion to extend was signed, and the fact that we have an attorney who has nothing to gain by misrepresenting the truth testified he sent a copy of the Virginia court order to the Illinois address, Mr. John McLaughlin's address. I also suspect that Judge Finson did not fully understand the reasonably ascertainable requirement that is laid out by statute. At the end of his motion to reconsider ruling, he said that even if he did not see it, meaning Michael, even by itself isn't enough to put McLaughlin on notice that National Alliance might be a creditor. Now he's not using this reasonably ascertainable language there, so I suspect he's not applying the law right, and what he says anyway is incredible as I've been arguing all along. These documents show National Alliance as a counterclaim, and both of them do. If Mr. McLaughlin, Michael had looked at these at all, he would have been alerted that there's a possible claim here, and it would have been easy to investigate. A phone call to Hanover County, Virginia, a look at the online docket record. He had an attorney, Mr. Jankiewicz, to check that out for him, but the fact that he saw these, which I'm assuming he did based on this evidence, I think there's no question that he should have investigated. The question really is, what's the likelihood he saw these documents at all? He says he didn't. Now I think the fact that Judge Vincent saw his demeanor in a courtroom carries less weight in this case because of the nature of the objective evidence against him, and because of the interested nature of this witness. The hundreds of thousands of dollars he stands to be free of any liability for forever if he just says, I didn't see anything, and he's subject to no punishment. Nobody can really question that. I just asked the court to say, to see what is more likely that these, one or the other, or both of the documents that he saw at some time and should have given actual notice to National Alliance, or that somehow he didn't see them. I just think it's more likely than not that he saw them and either didn't recognize the significance of them and didn't use reasonable diligence, or he did recognize them and just chose to ignore them in the hope that he would escape liability for this claim. I see I'm getting down to less than two minutes, so I think I'll conclude it there. Thank you. Thank you, Mr. Thomas. You'll have an opportunity to address this again in rebuttal. Mr. Cannon, you may proceed, sir. Thank you, Judge. May it please the court? Counsel? Mr. Thomas, certainly the Anderson case is our focus as well, Judge. And particularly the reasonable diligence standard that it provides for, what that, we interpret that case as telling us that whether or not, whether or not a creditor is reasonably ascertainable depends on the efforts of the administrator to discover creditors. And the efforts of the co-administrators in this case have been, well, have included precisely those that the Anderson suggested in that case, and specifically that is inquiries of those persons and concerns with whom the decedent had continuing business. The decedent in this case was a farmer by occupation, so his brothers slash co-administrators, one or both of them, contacted the farm industry dealers and business people that they knew their brother did business with and discovered some debts owed. In addition to those efforts, they went through a bunch of admittedly disorganized records. I think farmers are notorious maybe for not being great record keepers. They keep a lot of them in their truck and glove box, as was the case with Mr. John McLaughlin. But sorting through records scattered about the floor of John's house and in his truck, they were able, and then reviewing mail pretty much on a daily basis, they identified a number of national alliance as a creditor. They didn't receive anything, or if they did, they didn't understand its significance. And Michael's testimony was very clear on several occasions. He had no knowledge of a claim of national alliance, and arguably, I don't know that the analysis before this court needs to go any farther because, and I do have some more to say, but if the administrators followed the Anderson standard and made a reasonably diligent effort, if they didn't find something, they didn't find something, and they're forgiven for that. So again, that's as far as... Counsel, would they be forgiven if they found it, but as you said, did not understand the significance of what those letters represented for men? Absolutely, and I want to refer to this Anderson case specifically. I think this is page 129 or 130 of the official report. I'm not sure which report that is. The focus should not be on the actual knowledge of the claim by the executrix, nor upon what she subjectively understood legal documents to mean, had she looked for them and discovered them, period. Rather, the focus is on the efforts expended by the executrix in attempting to discover claims against the estate, and that's precisely the language that I had in mind when I just, when I said what I just got through saying, which is, we gave it the good college try. We didn't find something. We didn't find it. Counsel, are you contesting on appeal to the trial court's determination that the Bywater letter was admissible pursuant to Rule 216 and your failure to respond? By that I mean, to be clear, you're the appellee, but you could argue to us, I want to see if you have, I don't think you have, that since the Bywater letter is the primary means that the appellant is using to attack the ruling, we can affirm the ruling because the Rule 216 admission by the court was not correct. Would you make that argument? I don't think we did, Judge. Well then, the I think we need to clarify when we're talking about Bywater letter. The request to admit said, I had this in front of me a minute ago, I received a mailing. Admit that you received a mailing from, I have it right here, this is on page four of our brief. The request is, I received a mailing from Douglas E. Bywater addressed to number one, Long Grove, Monticello, Illinois, 61856 in March of 2017 or afterwards. That's the request to admit that was responded to late, but that's not, we didn't admit having received the order. The implication in the briefs that... Well, the trial court said more than that, did it not, when it determined the letter was admissible? Didn't the court say, quote, Mr. McLaughlin, Michael, acknowledges receiving mail from Mr. Bywater, the lawyer in Virginia who is representing the decedent, unquote. Right, but that's not the same thing as saying he admitted receiving the order of withdrawal. No, no, I understand, but you left out, as you just made representations to this court, about what this letter said as found by the trial court. The fact that it was from Mr. Bywater, the lawyer in Virginia who is representing the decedent. Was the trial court correct in that? That's not how, I'm looking at the, where we recited the specific requests in our brief on page four, it doesn't say anything about the lawyer in Virginia. I mean, that's who he was. The trial court was not correct in its recitation of what the request for admission of facts in the rule 216 requested? It doesn't appear to me that he was literally, I mean, it's true that Mr. Bywater was John McLaughlin's lawyer, but I don't see in the request themselves that... So this was merely the trial court's description of who Bywater was, but was not part of the request to admit, is that your conclusion? Yes. We make several arguments in our brief about the request to admit. First of all, as I've already addressed, to clarify, we did not admit receipt of the order, just a mailing. Secondly, we suggest on the basis of the authorities that we cite that having made that admission essentially by omission or oversight was an evidentiary rather than a judicial admission such that it was appropriate for the court to consider evidence, specifically Michael McLaughlin's testimony, that he didn't ever get that order. You mean a rule 26 admission, a rule 216 admission would be a judicial admission, but if it's admitted because of a failed respond, it's no longer a judicial admission, but an evidentiary admission? Well, the authorities that we cite on page 16 of our brief say that only admissions not the product of mistake or inadvertence become binding judicial admissions. We cited the North Shore Bank case. So what's the claim that this was somehow falling within that category? You just didn't respond. There's no claim that was a mistake. Your Honor, I believe the record will reflect that counsel for the appellants at that time was not aware that he had received separate requests to admit one for each co-administrator. He timely filed denials of these requests for one of the co-administrators. And then when he was alerted to the fact that there was another one to Michael McLaughlin, he filed a denial with the court's permission, not with the court's extension of time, but with the trial court's permission within a certain three-day period. So he ultimately filed denials of all these admissions by both of his co-administrators, but it was failing to do so the first time around for Michael was inadvertent. Well, how does an inadvertency, what case stands for the argument that an inadvertent failure to respond renders the question no longer a judicial admission that wasn't responded to? We cite several on our brief page 16, North Shore Community Bank versus Sheffield Wellington, Herman versus Power Maintenance. Don't those deal with the substance of the response as opposed to the failure to respond? I don't remember the specifics of those. Go ahead. Thank you. And we also are making reference to some arguments that we have in the brief about the question. The third one is that those admissions were waived by counsel for the appellant because he elicited testimony from one of the co-administrators at trial on the issue of receipt of that order. But even putting those arguments aside for the moment and to view the record most favorably for the appellant, all that can be said is that Michael McLaughlin, one of the co-executives, received the order of withdrawal from Mr. Bywater. The suggestion by counsel for appellant relative to the pro se filing that John McLaughlin made five days before his death, we think is not significant because it assumes that John McLaughlin would have kept a copy of what he filed. Judging by his other record keeping, it seems quite unlikely that he would have done that. But in any event, even if the co-administrators had received a copy of the order of withdrawal, that doesn't mean they understood what it meant. In other words, even assuming that Michael McLaughlin got a copy of the order, if he didn't understand it because he didn't appreciate being a layperson what a counterclaim was, or if he didn't see reference to counterclaim where it appeared in the body of that document, it goes back to the reasonably diligent standard. As long as he's trying hard to find creditors, he doesn't have to understand every document that he gets. So if he got that worst case scenario from the appellee standpoint, if the administrators got that order and didn't understand it, they're still not responsible for that, let's say. And Mr. Michael McLaughlin testified that he never saw any kind of mailing from National Alliance, and apparently the court believed that. But even if what he might have meant by that was, like a lot of us, we don't appreciate what it is, and we say, no, I never got it, but you didn't know what you were looking at. But either way, as long as he follows the overall reasonable, diligent search standard that Madison provides for, then that is sufficient. It's not what he understands these documents mean, but on his efforts. Let me ask this question. Does the evidence from the trial court show that the deceased had friends or contacts or other acquaintances of whatever sort in the state of Virginia? I'm sorry, would you ask that again, please? Yes. Does the record before the trial court from the testimony of the executive show that the deceased had friends or acquaintances of whatever nature in the state of Virginia? I think it does. I think it does reflect that John, the decedent, had some contact with people in Virginia. Does the request to admit regarding Mr. Bywater's letter that the court deemed admitted, whether it identified him as a lawyer, did it show that it was from somebody in Virginia? Let me look. No. First of all, it says he acknowledges receiving mail from Mr. Bywater, period. And there's nothing further describing where it came from or who Mr. Bywater is, is that correct? Correct. The only other thing that's in there, it says where it was addressed to, which is apparently, it says number one, Long Grove, Monticello, Illinois, in March of 2017. But it doesn't say who Bywater is, it doesn't say where the mailing came from. Thank you. So I just, maybe not very artfully, but I just went through a scenario of what I would call best case scenario for the appellant, which, of course, includes the assumption that the executives received a copy of this order of withdrawal. And even under that best case scenario, the judgment of the trial court can be affirmed based on the evidence. But another view of the evidence is, and this is entirely consistent with Michael McLaughlin's testimony, he said he never got the letter. And Judge Finson made four or five references in his last two rulings, the motion to bar and then the motion to reconsider, he made several references to Mr. McLaughlin's testimony, reflecting to me that he believed that Mr. McLaughlin was credible. And in that case, if he never got, if the administrators never got a copy of the order, then there would be no basis on which they should have pursued any investigation. I think Mr. Thomas's argument has been, well, you saw the order, you should have seen the word counterclaim in there and you should have poked around and investigated more. But if he never got the order, which is what he said, and apparently what Judge Finson believed, there's no basis for the argument that he should have investigated further. Did I hear a beep? Was that a two minute? Yes. Okay. I don't have anything else really to say other than, of course, we would ask that the judgment of the trial court be affirmed. Okay. Mr. Thomas, any rebuttal, sir? Yes. How much time do I have for rebuttal? Five minutes, sir. Okay. He set my timer. Well, I think what Mr. Tenney is arguing when he says if Michael saw the order and still has no obligation to file a group on that, well, what is he investigating? He's investigating claims against the estate and he gets a document and it's only one page long, one or two pages long, that show John McLaughlin is a counter defendant and National Alliance is a counter claimant. It boggles my imagination to say, well, I don't know what this means. I don't think that's credible for him to say that. Now, for him to say, I didn't see any of this. Counsel, what does it mean? Does it mean there's a claim? It means there possibly is a claim and he should reasonably investigate. Does it say anything about $850,000 or $850,000 for that matter? It doesn't matter if it gives an amount. It doesn't matter if it doesn't give the specifics of the claim. The fact that there's a claim should prompt him to investigate. That's only reasonable. That's what he's there for as an administrator, to look for claims. He gets a document that shows a counter claim against the deceased. He should do something about it, it seems to me. Well, the deceased died on February 22, 2017. Is that right? Yes, I believe so. And then a claim was not filed until October 25, 2018. Is that correct? That's correct. Okay, so there's this $850,000 claim out there, and over a year and a half nothing is filed. I guess the notion would be that your client didn't know that the decedent had died a year and a half earlier. Do you think the trial court may have found that out? Well, I wish my client did more, to be frank with you, but he didn't. And the fact that he didn't is not relevant. The fact is he was not given actual notice. He was entitled to actual notice if the claim could be reasonably ascertained. That's the law. Well, it could be. That's what I'm relying on. It could be that the trial court thought there was some relevance there in determining whether the trial court was going to believe Michael McLaughlin's testimony. Do you agree with that? Well, I don't know what the trial court was thinking. If it did think that, it was irrelevant for the reasons I just said. That's not what the law requires. It doesn't require to look at the claimant's actions. The law requires to look at the administrator's actions. Well, counsel, my point is the trial court had to make a credibility determination, correct? Correct. And the trial court did make a credibility determination and apparently believed Michael McLaughlin. Is that correct? Apparently so. But for the reasons I've argued, I don't think it was a correct credibility assessment. Okay. Continue on. You have about a minute left, counsel. Okay. Let me see here. I'm looking at my notes. So I think that the request to admit, I think Mr. Tenney pretty much said it should be admitted. And again, it's a matter of what's more likely than not. Mr. Tenney is arguing that while there was a mailing, we don't know there was an order in it. Well, look at the circumstances. We know Mr. Bywater had just withdrawn. We know that he sent something to John McLaughlin's Illinois address. What could else possibly else could it be? It probably wasn't a wedding invitation. It could only be a copy of the withdrawal order. At least it's possible. It could be a wedding invitation, but what's more likely than not. That's my point. Mr. Thomas. Yes, go ahead. Mr. Tenney said it could have been a final bill. Why couldn't it have been that? Well, Mr. Bywater said it was a court order. I think that's what he said in his deposition. Well, thank you, Mr. Thomas. We're going to take this matter under advisement. The court will stand in recess and appreciate your participation and Mr. Tenney's participation as well.